IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MELVIN JOHNSON,** | : | |
| Petitioner | : | |
| | : | No. 1:21-cv-2067 |
| v. | : | |
| | : | (Judge Rambo) |
| **SERGEANT BRADLEY,** | : | |
| Respondent | : | |

## MEMORANDUM

Petitioner Melvin Johnson, an inmate at the United States Penitentiary Canaan (USP Canaan), in Waymart, Pennsylvania, filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. He claims that his due process rights were violated during a disciplinary proceeding at a previous facility of incarceration and seeks expungement of the disciplinary conviction. Because there was no constitutional violation, the Court must deny Johnson's Section 2241 petition.

### I.  BACKGROUND

Johnson is currently serving a 152-month aggregate sentence imposed by the United States District Court for the Northern District of Ohio for, among other things, drug trafficking, conspiracy to engage in money laundering, and violation of supervised release. (*See* Doc. No. 14-1 at 6-7.) His current projected release date, via good-conduct time, is January 22, 2026. (*Id.* at 8.)

On March 20, 2020, mail addressed to Johnson was inspected by FCI Ray Brook officials and tested positive for heroin. (Doc. No. 19-1 at 41, 47.) After an

investigation, Johnson was charged with offense Code 111A (attempted introduction of narcotics) and Code 297 (circumvention of the telephone system). (*Id.* at 45, 46.) BOP records and Johnson's petition establish that he was given the official incident report on April 7, 2020, (*id.* at 41; Doc. No. 2 at 12), and the following day the Unit Discipline Committee (the "Committee") referred the matter to a Discipline Hearing Officer (DHO) "based on the codes," (Doc. No. 19-1 at 41.) During the Committee hearing, Johnson reportedly maintained that the "report is not true" and that "he was set up." (*Id.*)

That same day—April 8, 2020—Johnson was given a copy of the BOP's "Inmate Rights at Discipline Hearing" form, which outlines a prisoner's rights concerning disciplinary charges that are referred to a DHO for disposition. (*Id.* at 43.) He was also provided with a copy of the BOP's "Notice of Discipline Hearing Before the (DHO)" form, which informed him that his DHO hearing was scheduled for April 13, 2020, and which permitted him to choose whether to have a staff representative and whether to call witnesses (both of which Johnson declined). (*Id.* at 45.) Johnson signed both BOP forms, acknowledging that he had been advised of his rights. (*Id.* at 43, 45.)

On April 13, 2020, a hearing was held before a DHO. (*See generally id.* at 46-48.) During the hearing, Johnson stated that he had received his copy of the incident report but denied the charges therein, claiming that he had never asked

2

anyone to send him drugs. (*Id.* at 46.) The DHO, relying on the SIS report, staff memorandums, copies of emails, written transcripts of the at-issue telephone conversations, and photographic evidence of the drug testing of the heroin-soaked mail, found Johnson guilty of the Code 111A charge—attempted introduction of narcotics. (*Id.* at 46-47.) The DHO sanctioned Johnson with disallowance of 40 days' good-conduct time, forfeit of 20 days' nonvested good-conduct time, 60 days' disciplinary segregation, and loss of phone and visiting privileges for 180 days. (*Id.* at 48.)

Johnson attempted to administratively appeal his disciplinary conviction but claims that his appeal attempts were intentionally stymied by FCI Ray Brook officials. (*See* Doc. No. 2 ¶¶ 13-27.) He filed the instant Section 2241 petition in this Court in September 2021. (*See generally* Doc. Nos. 1, 2.) His petition is fully briefed and ripe for disposition.

## II. DISCUSSION

Johnson asserts that his procedural due process rights were violated during the disciplinary proceedings at FCI Ray Brook. He raises five arguments concerning these alleged constitutional infringements, but none is convincing.

Inmates retain certain procedural due process rights in prison disciplinary proceedings, although these rights "may be curtailed by the demands and realities of the prison environment." *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991) (citing

*Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974)). *Wolff v. McDonnell* enumerates those protections and requires, at minimum, (1) the right to appear before an impartial decision-making body; (2) written notice of the charge(s) at least 24 hours in advance of the disciplinary hearing; (3) an opportunity to call witnesses and present documentary evidence (so long as the presentation of such evidence is not "unduly hazardous to institutional safety or correctional goals"); (4) if the inmate is illiterate or complex issues are involved, assistance from another inmate or a staff member; and (5) a written decision by the factfinder setting forth the evidence relied on and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-70 (citations omitted).

### A.  Alleged Regulatory Violations

Johnson first argues that his constitutional rights were infringed because prison staff failed to deliver a copy of the incident report to him within 24 hours of becoming aware of the alleged violations. (Doc. No. 2 at 7-9.) He cites 28 C.F.R. § 541.5(a) as support. Johnson's argument is unavailing for two reasons. First, Section 541.5(a) states, in pertinent part, that "[a] staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing. You will *ordinarily* receive the incident report within 24 hours of staff becoming aware of your involvement in the incident." 28 C.F.R. § 541.5(a) (emphasis supplied). As the plain language of the regulation indicates, an inmate

4

will "ordinarily" receive the incident report within 24 hours of staff becoming aware of the prisoner's involvement, which naturally means that the regulation does not require or guarantee receipt of the incident report within 24 hours. *See Bullard v. Scism*, 449 F. App'x 232, 235 (3d Cir. 2011) (nonprecedential) (explaining district court's reasoning that "ordinarily" held within a certain time does not mean required to be held within a certain time).

Second, even assuming that Johnson is correct and he was not timely provided a copy of the incident report as required by Section 541.5, this does not mean that his constitutional rights were violated. The United States Court of Appeals for the Third Circuit, albeit in nonprecedential opinions, has repeatedly addressed this exact issue and found that failure to receive notice of the charges within 24 hours after prison officials became aware of the incident, by itself, does not amount to a constitutional violation. *See Gross v. Warden, USP Canaan*, 720 F. App'x 94, 96-97 (3d Cir. 2017) (nonprecedential); *Lang v. Sauers*, 529 F. App'x 121, 123 (3d Cir. 2013) (nonprecedential); *Millhouse v. Bledsoe*, 458 F. App'x 200, 203 (3d Cir. 2012) (nonprecedential). Johnson has not shown that "technical non-compliance with a regulation" prejudiced him, *see Millhouse*, 458 F. App'x at 203*; see also Bullard*, 449 F. App'x at 235, or that the regulation itself creates a liberty or property interest such that its violation could infringe his due process rights, *see Millhouse*, 458 F. App'x at 203 (citing *Sandin v. Conner*, 515 U.S. 472, 487 (1995)). Johnson received

5

the incident report on April 7, 2020, six days before the DHO hearing, which satisfies *Wolff v. McDonnell*'s due process requirements.

Johnson next claims that his due process rights were violated because the initial incident report was rewritten. (*See* Doc. No. 2 at 9-10.) Once again, however, even assuming redrafting occurred and that it somehow violated a BOP regulation (a violation that Johnson has not established or even alleged), Johnson has failed to show that he was prejudiced or that the regulation itself implicates a liberty or property interest. Thus, this argument fails for the same reasons that his first regulatory argument fails. *See Millhouse*, 458 F. App'x at 203; *Bullard*, 449 F. App'x at 234, 235.

### B. Alleged Due Process Violations

Johnson's third argument appears to be that he was not given written or verbal notice of his right to the assistance of a "fellow prisoner" in defending against the disciplinary charge. (Doc. No. 2 at 11.) Johnson contends that he is "functionally illiterate" regarding the "complex" disciplinary process, and therefore his due process rights were infringed when he was not informed of his right to the assistance of a fellow prisoner. (*Id.*)

Johnson misapprehends the due process requirements set forth in *Wolff v. McDonnell*. In that case, the Supreme Court of the United States clearly stated that if a prisoner is "illiterate" (meaning unable to read or write), or if the disciplinary

6

issue is so complex that it is "unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case," then the prisoner "should be free to seek the aid of a fellow inmate, *or* if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff." *Wolff*, 418 U.S. at 570 (emphasis supplied). This procedural requirement is explicitly stated in the disjunctive, meaning that in cases where the inmate cannot read or write or where the case is exceedingly complex, a prisoner must have the option of being assisted by a fellow inmate *or* by a staff member.

Assuming the instant disciplinary proceedings were sufficiently complex, the record clearly demonstrates that, on multiple occasions, Johnson was provided with notice of his right to have a staff representative assist him. First, this notice was given to him on April 8, 2020, in the "Inmate Rights at Discipline Hearing" form, which he signed. (*See* Doc. No. 19-1 at 43 ¶ 2.) He was again provided notice of this right on the same day in the "Notice of Discipline Hearing Before the (DHO)" form, wherein he declined the assistance of a staff representative. (*See id.* at 45.) Johnson's voluntary waiver of staff assistance was later confirmed at the DHO hearing. (*See id.* at 46.) Thus, there was no due process violation with regard to the right to assistance from a fellow prisoner or staff member (or notice thereof).

Johnson next argues that he was denied the right to present evidence in his defense. He maintains that the original incident report, which allegedly was destroyed and then rewritten, would establish that he did not ask prison staff about the drug-soaked power of attorney (POA) that was sent to him in the mail. (Doc. No. 2 at 13.) He also asserts that he should have been permitted to obtain an outside laboratory test of the POA. (*Id.* at 14.)

The problem with this argument is that Johnson does not establish how his due process rights were infringed by not being given the original version of a rewritten incident report or by being denied outside laboratory drug testing. Johnson concedes that there is no regulation prohibiting incident reports from being rewritten. (*See id.* at 10.) Furthermore, the point of the incident report is to "apprise[ the prisoner] of the charge against him . . . and the basis for the allegation" so that the prisoner can defend against it. *Bullard*, 449 F. App'x at 234. Johnson received those due process protections through the April 7, 2020 incident report. Additionally, Johnson has not proffered any evidence that he sought a copy of the allegedly destroyed original report and his request was denied, or that he attempted to raise this issue during the DHO hearing. (*See* Doc. 19-1 at 47.) Finally, on April 8, 2020,

Johnson was apprised of his right to present documentary evidence at the DHO hearing, (*see id.* at 45), and failed to do so, (*see id.* at 47).[1]

Additionally, Johnson has failed to show how he was prejudiced by this purported denial of evidence. *See Pachtinger v. Grondolsky*, 340 F. App'x 774, 776-77 (3d Cir. 2009) (nonprecedential) (examining whether prisoner was prejudiced by alleged denial of certain evidence at disciplinary proceeding). Although Johnson claims the original incident report would be exculpatory by showing that he never asked prison staff about the POA, he does not explain how it would overcome the extensive evidence relied on by the DHO to find him guilty of the charged offense, in particular the transcripts from multiple phone calls made by Johnson "referencing a Power of Attorney form." (Doc. No. 19-1 at 47.)

As to his request for outside laboratory testing, Johnson can only speculate as to what the result of that testing might have been. This type of bald speculation does not demonstrate that he was prejudiced by the absence of the requested testing. Under Johnson's reasoning, any denial of a prisoner's request for additional investigation (*e.g.*, outside laboratory testing) would constitute a due process violation and render the disciplinary proceedings void. This is obviously not the

---

[1] The Court additionally notes that, although Johnson claims that "Unit Team Leader Rivera was present" when Johnson inquired "solely as to the receipt from the court" and not the POA and thus Rivera could have confirmed Johnson's version of events, Johnson did not name or call Rivera as a witness. (*See* Doc. No. 2 at 13; Doc. No. 19-1 at 46.)

9

intent of *Wolff*'s mandate that a prisoner be allowed to present evidence in his defense.

Johnson's final argument is that there was insufficient evidence to support the DHO's decision.[2]  When an inmate challenges the sufficiency of the evidence in a prison disciplinary proceeding that resulted in the loss of good-conduct time, "the requirements of due process are satisfied if *some evidence* supports the decision" to revoke good-time credits.  *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985) (emphasis supplied).  Determining whether this standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.*  Rather, the relevant inquiry for the court is whether there is "any evidence in the record that could support the conclusion" reached by the decisionmaker.  *Id.* at 455-56; *see also Denny v. Schultz*, 708 F.3d 140, 144 (3d Cir. 2013) ("[T]he 'some evidence' standard is a standard of appellate review to be applied by the district court rather than a burden of proof in a prison disciplinary proceeding." (citation omitted)).

There is no question that the DHO's decision was based on "some evidence" of Johnson's guilt.  As the report reflects, the DHO relied on the SIS report, staff

---

[2] Although Johnson labels this argument as a "substantive due process" claim, a challenge to the sufficiency of the evidence in a disciplinary proceeding is a *procedural* due process challenge.  *See Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454-55 (1985) (examining "nature of the constitutionally required procedures" for disciplinary hearing that results in loss of "protected liberty interest" of good time credits).

memorandums, emails, transcripts of the at-issue telephone conversations, and photographic evidence of the drug testing to find that Johnson had committed the Code 111A charge. (*See* Doc. 19-1 at 46-47.) As such, Johnson's final argument is completely without merit.

### III. CONCLUSION

None of Johnson's arguments establish a procedural due process violation during his prison disciplinary proceedings. Accordingly, the Court will deny Johnson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. An appropriate Order follows.

s/ Sylvia H. Rambo
United States District Judge

Dated: January 18, 2023